

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH:KTF
F. #2017R00453

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 3, 2021

<u>By ECF and Email</u>

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   <u>United States v. William Ciaramello</u>
              <u>Criminal Docket No. 20-381 (LDH)</u>

Dear Judge DeArcy Hall:

      The government respectfully submits this letter in anticipation of the defendant William Ciaramello's sentencing, which is not currently scheduled. For the reasons set forth below, the government respectfully requests that the Court sentence the defendant to a term of incarceration of 12 months, which is below the United States Sentencing Guidelines ("USSG") range of 24 to 30 months as calculated in the Presentence Investigation Report ("PSR"). The government also respectfully requests that the Court schedule Mr. Ciaramello's sentencing for a date in early 2022.

I.  <u>Procedural Background</u>

      On October 1, 2020, the defendant waived indictment and pleaded guilty pursuant to a plea agreement to a one-count information (the "Information") charging the defendant with making fraudulent and false statements on a tax return in violation of 26 U.S.C. § 7206(1).

II.  <u>Factual Background</u>

      The facts of this case are set forth in detail in the Presentence Investigation Report ("PSR"), dated January 26, 2021, and set forth in summary below.

      The defendant worked for Soupman, Inc. ("Soupman") in or about and between 2009 and 2017. Soupman was a corporation doing business in Staten Island, New York. Soupman manufactured and sold soup to grocery chains and to its franchised restaurants under the brand name "Original Soupman."

      During tax years in or about and between 2009 and 2016, the defendant failed to

Hon. LaShann DeArcy Hall
December 3, 2021
Page 2

report to the Internal Revenue Service ("IRS") the compensation he received from Soupman on his U.S. Individual Income Tax Return, Form 1040 ("personal tax returns"). The unreported compensation he received from Soupman during this period totaled approximately $527,559. Ciaramello falsely identified his occupation on his personal tax returns as "none" in or about tax years 2009 and 2010, "unemployed" in or about tax years 2011 and 2012, and "disabled" in or about and between tax years 2013 and 2016.

The defendant's personal tax returns also reflected that he collected disability benefits from the Social Security Administration ("SSA") during the same period, although his employment at Soupman should have rendered him ineligible for such benefits.

The defendant's misconduct was discovered during a separate criminal tax investigation that resulted in charges against Soupman's Chief Financial Officer, Robert Bertrand. See United States v. Bertrand, 17-CR-186 (PKC) (E.D.N.Y.).[1]

The defendant prepared his personal tax returns in tax years 2009 and 2010, and his relative, a Certified Public Accountant ("CPA") (referred to herein and in the Information as "Individual #1"), prepared the defendant's personal tax returns in tax years 2011 through 2016.

In order to conceal the compensation he earned at Soupman from the IRS and SSA, the defendant diverted his compensation to a nominee entity called ISIL Consulting ("ISIL"). ISIL was a corporation formed by Individual #1. Individual #1 also prepared ISIL's tax returns. ISIL's tax records, formation documents and bank records listed Individual #1 and the defendant's spouse as ISIL's owners and executive officers. The defendant was not identified as an owner, officer or employee on any of ISIL's corporate records or tax returns.

By diverting his compensation from Soupman to ISIL, and falsely identifying himself as having no occupation or being "unemployed" or "disabled" although he was employed at Soupman during the relevant time period, the defendant willfully omitted his income from his personal tax returns and collected SSA disability benefits for which he was ineligible. This caused losses to the IRS and SSA as set forth in the table below:

---

[1] Bertrand pleaded guilty pursuant to a plea agreement to one count of failure to collect, account for, and pay over trust fund taxes, in violation of 26 U.S.C. § 7202, and was sentenced to 9 months' imprisonment.

Hon. LaShann DeArcy Hall
December 3, 2021
Page 3

| Tax Year | Losses to the IRS for Employee Portion of Taxes | Losses to the SSA for Disability Benefits Paid | Total |
|---|---|---|---|
| **2010** | $18,973.23 | $21,384.00 | $40,357.23 |
| **2011** | $46,562.25 | $22,542.00 | $69,104.25 |
| **2012** | $11,738.65 | $23,363.00 | $35,101.65 |
| **2013** | $5,854.82 | $23,756.00 | $29,610.82 |
| **2014** | $9,075.00 | $24,106.00 | $33,181.00 |
| **2015** | $25,347.76 | $24,514.00 | $49,861.76 |
| **2016** | $50,421.71 | $24,523.00 | $74,944.71 |
| **Total** | **$167,973.42** | **$164,188.00** | **$332,161.42** |

III. The Guidelines Calculation and Restitution

        Probation calculates the defendant's total Guidelines offense level as 15 and his Criminal History Category as III, leading to a Guidelines range of 24 to 30 months. PSR ¶ 56. The plea agreement in this case estimated the defendant's adjusted offense level to be 17, and his Criminal History Category to be I, leading to the same Guidelines range. Probation's and the government's calculations differ because (i) the government's calculation included the $164,188 in losses to the Social Security Administration as part of its loss amount calculated under USSG section 2T4.1, leading to a 2-level increase over Probation's calculation, and (ii) the government undercalculated the defendant's criminal history score. The government submits the Probation Department's method of calculating the Guidelines range is the appropriate one, although both calculations resulted in the same applicable Guidelines range.

        The plea agreement provided for restitution of $167,973.42 to the IRS, which the defendant has already paid in full, and restitution of $164,188.00 to the SSA, which the defendant has been paying back pursuant to a payment plan reached separately with the SSA.

Hon. LaShann DeArcy Hall
December 3, 2021
Page 4

IV. Responses to the Defendant's PSR Objections

The government agrees with the defendant's objection number 2 and takes no position as to objections 1 and 3 through 9, as these facts relate to the defendant's background and are not within the government's knowledge.

As to objection 10, in which the defendant argues that his prior two misdemeanor DWI convictions should not generate a total of four criminal history points, the government disagrees with the defendant's legal analysis, although, as noted above, the government undercalculated the defendant's criminal history in its Guidelines calculation contained in the plea agreement, and in any event is advocating for a below-Guidelines sentence. As set forth in detail below, the government's position is that Amendment 766 to the Guidelines (effective Nov. 1, 2012) makes clear that "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the offense is classified" and, therefore, Probation's criminal-history calculation correctly accounted for the defendant's prior DWI convictions.

In pertinent part, U.S.S.G. § 4A1.1 states that, when calculating a defendant's Criminal History Category, the court should:

> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
>
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.
>
> (d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

U.S.S.G. § 4A1.1(a)-(d).

U.S.S.G. § 4A1.2(a)(1) states that "[t]he term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(c) states that "all felony offenses" are counted as a "prior sentence," but excludes certain misdemeanors and petty offenses under subsections (1) and (2) of that section, including, as applicable here, misdemeanors for "careless or reckless driving."

Application Note 5 to U.S.S.G. § 4A1.2(c) clarifies that "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known)

are always counted, without regard to how the offense is classified." U.S.S.G. § 4A1.2(c) cmt. n.5. It further states that "[p]aragraphs (1) and (2) of § 4A1.2(c) do not apply." Id.

Amendment 766 to the Guidelines (effective Nov. 1, 2012) changed Application Note 5 to its current text. According to the Sentencing Commission, the purpose of the amendment was to "resolve differences among circuits regarding when prior sentences for misdemeanor offenses of driving while intoxicated and driving under the influence (and any similar offenses by whatever name they are known) are counted toward the defendant's criminal history score." U.S.S.G., Amend. 766. Specifically, the Commission explained that "[m]ost circuits have held that driving while intoxicated convictions, including misdemeanors and petty offenses, always count toward the criminal history score, without exception, even if the offense met the criteria for either of the two lists." Id. The Commission noted that the Second Circuit, however, had adopted a different approach in United States v. Potes-Castillo, 638 F.3d 106 (2d Cir. 2011), holding that "a prior sentence for driving while ability impaired should be treated like any other misdemeanor or petty offense, except that they cannot be exempted under section 4A1.2(c)(2)." Id. (internal quotation marks omitted). "According to the Second Circuit, such a sentence can qualify for an exception, and therefore not be counted, under the first list (e.g., if it was similar to 'careless or reckless driving' and the other criteria for a first-list exception were met)." Id.

In passing Amendment 766, the Commission specifically sought to overrule the Second Circuit's decision: "The amendment resolves the issue by amending Application Note 5 to clarify that convictions for driving while intoxicated and similar offenses are always counted, without regard to how the offenses are classified. Further, the amendment states plainly that paragraphs (1) and (2) of § 4A1.2(c) do not apply." Id.

The Commission explained its rationale as follows: "This amendment reflects the Commission's view that convictions for driving while intoxicated and other similar offenses are sufficiently serious to always count toward a defendant's criminal history score. The amendment clarifies the Commission's intent and should result in more consistent calculation of criminal history scores among the circuits." Id.

Pursuant to U.S.S.G. § 1B1.11 and 18 U.S.C. § 3553, the Court is to apply the Guidelines and policy statements in effect at the time of sentencing, which includes Amendment 766. Thus, in calculating the defendant's criminal history score, Probation properly assigned each DWI conviction one point pursuant to U.S.S.G. § 4A1.1(c) and Application Note 5, and added two additional points because the defendant committed the instant offense while under a criminal justice sentence for his 2014 conviction for driving while intoxicated. PSR ¶¶ 21-23.

V. Consideration of Section 3553(a) Factors

For the reasons set forth below, the government respectfully submits that a below-Guidelines sentence of 12 months is appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

A.  Legal Standard

In United States v. Booker, the Supreme Court held that the Guidelines are advisory and not mandatory and made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but also may tailor the sentence in light of other statutory concerns.  125 S. Ct. 738, 743 (2005); see 18 U.S.C. § 3553(a).  Subsequent to Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines ... to 'consider' them, along with the other factors listed in section 3553(a)."  United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).  Although the Court declined to determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, the Court cautioned that judges should not "return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum."  Id. at 113.

Later, in Gall v. United States, the Supreme Court clarified the proper procedure and order of consideration for sentencing courts as follows: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [s]he may not presume that the Guidelines range is reasonable.  [Sh]e must make an individualized assessment based on the facts presented."  Id. at 49-50 (citation and footnote omitted).

B.  A Sentence of a Year and a Day Is Appropriate in This Case

A below-Guidelines sentence of 12 months is appropriate in this case.

On the one hand, the offense was a serious one that merits an incarceratory sentence that ensures general deterrence and promotes respect for the law.  The offense took place over a period of years and was only discovered as a result of a separate investigation into tax irregularities at Soupman.  The defendant's fraud allowed him to double-dip from the public fisc for years, enabling him to both (i) avoid paying income taxes and (ii) collect disability benefits, enriching himself by over $330,000.  To state the obvious, this scheme was funded by taxpayer money.  That the defendant used a shell entity to accomplish the scheme illustrates the intention, complexity and secrecy with which he engaged in the fraud.

Indeed, as many courts have recognized, there is a greater need for general deterrence for fraud schemes like this that are difficult to detect and prosecute.  See, e.g., Harmelin v. Michigan, 501 U.S. 957, 988 (1991) (noting that "since deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties").  Moreover, because "economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence."  See, e.g., United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White–Collar Plea

Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005) (internal quotation marks omitted); United States v. Heffernan, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); Drago Francesco, Roberto Galbiati & Pietro Vertova, The Deterrent Effects of Prison: Evidence From a Natural Experiment, 117 J. of Political Econ. 257, 278 (2009) ("Our findings provide credible evidence that a one-month increase in expected punishment lowers the probability of committing a crime. This corroborates the theory of general deterrence.").

On the other hand, the defendant's post-arrest behavior and personal history and characteristics suggest that he poses a low risk of recidivism or dangerousness. After being confronted with his crime, the defendant's behavior was immediately remorseful: he quickly accepted responsibility for his actions, including waiving indictment; he has been in compliance with his bail conditions; and he has made significant progress on repaying the money he stole, including already paying the agreed-upon restitution amount to the IRS. With respect to his personal history, as described in the PSR, the defendant faced serious hardships as a child, but nevertheless made a good life for himself and his family with the notable exception of this crime and two misdemeanor DWI convictions.

V.  Conclusion

Balancing the seriousness of the offense and the need for general deterrence against the low risk of the defendant's reoffending, as demonstrated by his compliant behavior and acceptance of responsibility over the past several years, the government respectfully submits that a sentence of 12 months would be appropriate in this case. The government also respectfully requests that the Court schedule Mr. Ciaramello's sentencing for a date in early 2022.

Respectfully submitted,

BREON PEACE
United States Attorney

By:        /s/
Kaitlin T. Farrell
Assistant U.S. Attorney
(718) 254-6072

c.c.: Clerk of Court (LDH) (by ECF)
David Hammer, Esq. (Defense Counsel) (by ECF and Email)
Monia Patterson-Wilder, U.S.P.O. (by Email)